Filed 1/6/23 P. v. Moye CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| THE PEOPLE, | C095095 |
| Plaintiff and Respondent, | (Super. Ct. No. 62-163831B) |
| v. | |
| DAMION MOYE, JR., | |
| Defendant and Appellant. | |

After a jury found defendant Damion Moye, Jr., guilty of robbery, car theft, and two counts of burglary, the trial court sentenced him to 25 years in prison. Defendant argues the trial court violated his right to due process by instructing the jury with CALCRIM No. 315, which, in part, directs the jury to consider an eyewitness's certainty in evaluating that testimony. Defendant also argues, and the People agree, we should remand this case for resentencing in light of recent amendments to Penal Code[1] section 1170 by Senate Bill No. 567 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 731, § 1.3). We shall remand for resentencing and otherwise affirm the judgment.

---

[1] Undesignated section references are to the Penal Code.

1

FACTUAL AND PROCEDURAL BACKGROUND

Defendant and an accomplice[2] were charged with robbery (count one), grand theft of property (count two), two counts of burglary (counts three & four), and unlawful driving or taking of a vehicle (count five). The information also made the following allegations: another person, who was not an accomplice of defendant, was present in the residence during the commission of count three; counts three and four were not eligible for probation; counts three, four, and five were committed while defendant was released on bail; and defendant had a prior serious or violent felony conviction.

We limit our description of the facts to the burglary of N.K.'s residence, as this was the only eyewitness identification issue raised by defendant. On August 21, 2019, at about 2:00 p.m., N.K. returned to her Roseville home and saw a car parked out front. When she went into her house, she heard noises and saw defendant's accomplice standing in her kitchen. The accomplice yelled to defendant and defendant ran out of N.K.'s bedroom. N.K. asked the first man, "What are you doing here?" and both men ran out the front door to the car parked out front.

When N.K. looked outside, she saw the men coming back towards the house. She screamed she would call the police and the men ran back to the car. N.K. took a photo of defendant getting into the driver's seat of the car and a photo of the car as they left. Those photographs showed much of defendant's face (although his chin and part of his nose were obscured by the top of the car), defendant's dreadlocks, and he was wearing a blue hat and a white T-shirt. The photographs also showed the license plate on the car. These photographs were admitted into evidence and published to the jury.

---

[2]     Prior to trial, the accomplice pled guilty to counts one, three, and four, in exchange for a three-year sentence.

N.K. testified several personal items (including a watch) and a package that was left on the porch were missing from her home after the burglary. A shoe print similar to the shoe defendant was wearing was found near the apparent point of entry.

When officers arrived, N.K. originally described defendant as having red, yellow, and white in his hair, with long black dreadlocks. She did not tell the responding officers defendant had bleached dreadlocks or was wearing a blue hat.

The police located the car about half an hour later in northern Sacramento and arrested defendant. The video of the arrest was played for the jury and showed defendant's face clearly, that he had dreadlocks, and was wearing a blue hat and white T-shirt. Defendant was driving the car N.K. photographed him in while he drove away from her house. When arrested, defendant was wearing a watch taken from N.K.'s home. Officers also found other items taken from N.K.'s home in the car.

At the field showup, N.K. first told the officer defendant was not the correct person because she did not recognize the way his hair looked. After she reviewed her photo of him on her phone and after the police put his blue hat back on him, N.K. identified defendant as the man at her house. By contrast, N.K. identified the accomplice immediately.

At trial, N.K. identified defendant as the person who was coming out of the room in her house and testified she was certain of her identification of defendant.

The defense presented no witnesses.

The trial court instructed the jury with CALCRIM No. 315 on how to evaluate eyewitness testimony. Neither party objected to this instruction. The trial court also instructed the jury with CALCRIM No. 220, reaffirming defendant is presumed innocent and the prosecutor had the burden to prove his guilt beyond a reasonable doubt. The trial court instructed the jury generally on the evaluation of witness testimony, including the factors relating to witness believability, set forth in CALCRIM No. 226.

3

In closing argument, the prosecutor identified N.K.'s eyewitness testimony as key evidence in his case. The prosecutor, however, also identified other evidence that supported finding defendant guilty of the burglary: the photograph of defendant and the car at the scene; the short time between the burglary and defendant's apprehension in that same car; the shoe print at the point of entry; the video of the arrest of defendant; and defendant being in possession of the stolen items (including wearing the watch) shortly after the burglary.

Defendant countered by focusing on the inconsistencies between N.K.'s initial description of defendant and his actual characteristics. He argued she said defendant had red, yellow, and white in his black dreadlocks, but did not report he had a blue hat or bleached dreadlocks. Defendant's counsel argued N.K.'s original inability to identify defendant at the field showup also undercut her identification of him.

The jury found defendant guilty of robbery, two counts of burglary, and auto theft. It also found not true the special allegation a nonparticipant was present during the commission of one burglary count. In a bifurcated proceeding, the jury also found true defendant committed the burglary and auto theft counts while on bail and had a prior conviction for robbery.

At sentencing, the trial court found the following circumstances in aggravation: the burglary involved a high degree of callousness; there was some planning and sophistication; defendant engaged in violent conduct in the past indicating a danger to society; his prior convictions were numerous; he had served two prior prison terms; he was on probation at the time of the offenses; and his performance on probation or parole was unsatisfactory. The only mitigating factor was "defendant was proud of his children."

The trial court sentenced defendant to an aggregate term of 25 years in prison consisting of the upper term of six years doubled to 12 years for the prior strike for burglary (count three); a subordinate and consecutive term of one-third the middle term

4

of one year doubled to two years for robbery (count one); a subordinate and consecutive term of one-third the middle term of one year four months doubled to two years eight months for burglary (count four); a subordinate and consecutive term of one-third the middle term of eight months doubled to one year four months for unlawful driving or taking of a vehicle (count five); an additional consecutive term of two years for the on-bail enhancement; and an additional consecutive term of five years for the serious felony prior.

Defendant timely appealed.

DISCUSSION

I

*CALCRIM No. 315*

Defendant contends the trial court violated his right to due process by instructing the jury with the eyewitness certainty language contained in CALCRIM No. 315 because the factor of witness certainty is not necessarily correlated with accuracy in identification. We disagree.

In full, CALCRIM No. 315, as given to this jury, provides: "You have heard eyewitness testimony identifying the defendant. As with any other witness, you must decide whether an eyewitness gave truthful and accurate testimony. In evaluating identification testimony consider the following questions: Did the witness know or have contact with the defendant before the event? How well could the witness see the perpetrator? What were the circumstances affecting the witness's ability to observe such as lighting, weather conditions, obstructions, distance and duration of observation? How closely was the witness paying attention? Was the witness under stress when he or she made the observation? Did the witness give a description and how does that description compare to the defendant? How much time passed between the event and the time when the witness identified the defendant? Was the witness asked to pick the perpetrator out of a group? Did the witness ever fail to identify the defendant? Did the witness ever

5

change his or her mind about the identification? *How certain was the witness when he or she made an identification?* Are the witness and the defendant of different races? Was the witness able to identify other participants in the crime? Was the witness able to identify the defendant in a photograph or physical lineup? Were there any other circumstances affecting the witness's ability to make an accurate identification? [¶] The People have the burden of proving beyond a reasonable doubt that it was the defendant who committed the crime. If the People have not met this burden, you must find the defendant not guilty." (Italics added.)

## A

### *Forfeiture*

The parties first argue whether defendant's argument concerning the witness certainty language is forfeited because defendant did not object to CALCRIM No. 315 at trial. Defendant argues trial counsel had no obligation to object because the trial court had a sua sponte duty to delete inappropriate factors from that instruction. As our Supreme Court has explained, a defendant's failure to request a modification of an instruction on eyewitness certainty in the trial court forfeits the ability to challenge the instruction on appeal. (*People v. Sanchez* (2016) 63 Cal.4th 411, 461-462 [with respect to a challenge to the witness certainty language in the predecessor instruction to CALCRIM No. 315, the defendant's challenge to the inclusion of the certainty language was forfeited because the defendant did not request a modification of the instruction].)

Defendant asserts if this court finds he forfeited his claim, he received ineffective assistance of counsel. While we decline to address that issue, we will analyze the merits of defendant's claim in order to consider if defendant suffered prejudice.[3]

---

[3] To prevail on a claim of ineffective assistance of counsel, a defendant must show (1) counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) the deficient performance prejudiced defendant. (*Strickland v. Washington* (1984) 466 U.S. 668, 688, 691-692.)

## B

### *Witness Certainty Instruction*

In *People v. Lemcke* (2021) 11 Cal.5th 644, our Supreme Court concluded the witness certainty portion of the instruction does not violate a defendant's due process rights. In *Lemcke*, our Supreme Court found it significant the defendant was able to present expert evidence about eyewitness identification, and the jury was instructed " '[p]eople sometimes honestly . . . make mistakes about what they remember,' " and that it was responsible for " 'judg[ing] the credibility or believability of the witnesses.' " (*Id.* at p. 658.) Further, *Lemcke* noted that in the instruction on eyewitness identification, the jury was instructed: " 'The People have the burden of proving beyond a reasonable doubt that it was the defendant who committed the crime. If the People have not met this burden, you must find the defendant not guilty.' " (*Ibid.*) In that context, our Supreme Court held, "[L]isting the witness's level of certainty as one of 15 factors the jury should consider when evaluating an eyewitness identification did not render [the defendant's] trial fundamentally unfair or otherwise amount to a due process violation." (*Id.* at p. 661.)

Here, because the trial court provided the jury with the instructions sanctioned by *Lemcke*, the challenged portion of the instruction did not deprive defendant of due process. The trial court reinforced the instruction in CALCRIM No. 315 (that it was the People's burden to prove beyond a reasonable doubt defendant committed the crime, and if they failed to meet that burden defendant was not guilty) with CALCRIM No. 220 (that defendant was presumed innocent, and the prosecution was required to prove he was guilty beyond a reasonable doubt). Further, the trial court provided direction to the jurors on how to evaluate witness testimony generally using CALCRIM No. 226, informing them that they "alone [had to] judge the credibility or believability of the witnesses" and that "[p]eople sometimes honestly . . . make mistakes about what they remember." That

7

instruction also told the jurors they could "consider anything that reasonably tends to prove or disprove the truth or accuracy of . . . testimony."

Defendant presented no expert testimony to rebut any inference that an eyewitness's certainty as to an identification correlates to its accuracy, however, he was not prevented from doing so. Instead, defense counsel chose to highlight inconsistencies in N.K.'s eyewitness identification in his closing argument: N.K.'s original description did not fit defendant, and she did not say anything about his blue hat or bleached dreadlocks. Defense counsel reminded the jury N.K. could only identify defendant at the field showup after the police put the blue hat on him and after looking at the photograph she took. By contrast, she was able to immediately identify the accomplice.

While defendant's identity was at issue here, as it was in *Lemcke*, witness certainty was only one of 15 factors the jury was directed to consider. Additional evidence presented to this jury rendered the question of N.K.'s certainty of the identification of little importance. The jury had the color photographs N.K. took of defendant (showing his face, hair, and hat) and the car he used to flee her house, including its license plate. Defendant was apprehended nearby in that same car about half an hour after the burglary. The jury had available the photograph N.K. took of defendant and his car at her home and the police video of him and the car at his arrest to compare to the man sitting at the defense table in court. When he was arrested, defendant was wearing a watch stolen from N.K.'s home. Other items taken from the N.K.'s home were located in the car. Finally, the shoe print found at the point of entry was similar to the shoes defendant was wearing when he was apprehended. Thus, N.K.'s certainty of her identification was simply an insignificant factor.

Because defendant here was free to present his own expert evidence on eyewitness identification and the jury was given the specific instructions on witness testimony and the burden of proof our Supreme Court in *Lemcke* found to be significant in alleviating any due process problem, and because the jury received independent tangible evidence

tying defendant directly to the crime, there is no merit in defendant's contention his right to due process was violated by the inclusion of language regarding witness certainty in CALCRIM No. 315.

## II

### *Resentencing*

Defendant argues this case must be remanded for resentencing due to changes to section 1170 by Senate Bill No. 567 (2021-2022 Reg. Sess.). The People agree and we accept the concession.

Among other things, Senate Bill No. 567 generally limits the trial court's ability to impose an upper term sentence unless aggravating circumstances have been stipulated to by the defendant or found true beyond a reasonable doubt by a jury or by the court in a court trial. (§ 1170, subd. (b)(1), (2), added by Stats. 2021, ch. 731, § 1.3.) An exception to this general rule is evidence of the defendant's prior convictions established by certified records of conviction, which need not be submitted to a jury. (§ 1170, subd. (b)(3), added by Stats. 2021, ch. 731, § 1.3.)

Here, the trial court sentenced defendant to the upper term of six years on count three. While the jury found defendant committed three of the crimes while he was on bail and he had one prior conviction, most of the factors in aggravation supporting the upper term sentence were neither stipulated to by defendant nor found true beyond a reasonable doubt by the jury or court. (See § 1170, subd. (b)(2), added by Stats. 2021, ch. 731, § 1.3.) We agree with the parties remand is appropriate so the trial court may resentence defendant in light of the changes effected by Senate Bill No. 567.

## DISPOSITION

The matter is remanded to the trial court for resentencing, and the judgment is otherwise affirmed.

/s/
Robie, Acting P. J.

We concur:

/s/
Duarte, J.

/s/
Boulware Eurie, J.